[L. A. No. 5002.  In Bank.—October 20, 1920.]

## SECURITY TRUST & SAVINGS BANK, Appellant, v. FIDELITY & DEPOSIT COMPANY, Respondent.

[1] PLEADING—WANT OF VERIFICATION—TRIAL WITHOUT OBJECTION— WAIVER.—Where parties proceed to trial upon an unverified petition or answer without objection thereto, they are held, by so doing, to waive their right to object to the want of verification.

[2] ID.—UNVERIFIED PETITION FOR APPOINTMENT OF GUARDIAN—WAIVER OF DEFECT—ORDER NOT SUBJECT TO COLLATERAL ATTACK.—Where after the filing of a petition for the appointment of a guardian notice was duly given and a hearing was regularly held, the omission to verify the petition as required by section 1763 of the Code of Civil Procedure was waived, and no want of jurisdiction being disclosed on the face of the record, the order of appointment cannot be collaterally attacked.

[3] GUARDIAN AND WARD — UNAUTHORIZED RELEASE OF GUARDIAN'S MORTGAGE — MONEY BORROWED FROM NEW MORTGAGEE — WARD'S PROPERTY.—Where a guardian caused a mortgage to be executed on real property owned by her in favor of her ward for the purpose of securing the restoration to the latter of moneys misappropriated by the guardian, and subsequently released of record such mortgage without an order of court, in order that she might obtain from a third person a loan on the property in an amount greater than that of the ward's mortgage, the money obtained on the new mortgage to the extent of the amount of the ward's mortgage is regarded in equity as paid for the use and benefit of the ward, and if misapplied by the guardian, such misappropriation amounts to embezzlement and the ward must look to the guardianship bond for reimbursement.

[4] ID.—VALIDITY OF RELEASE—PRIORITY OF NEW MORTGAGE.—Under such circumstances, the release of the ward's mortgage is valid, and the surety on the guardianship bond, as assignee of such mortgage, cannot claim any interest in the property as against the purchaser at the foreclosure sale of the new mortgage.

[5] MORTGAGE — ASSIGNMENT TO SURETY OF MORTGAGOR — AMOUNT ENFORCEABLE.—Where a recorded mortgage and the note secured thereby were for a specific sum, the assignee of the mortgagee could not, in any event, enforce the mortgage for a greater sum than the amount thereof with interest, regardless of the amount paid by the assignee under its obligation as surety for the mortgagor on the guardianship bond.

---

3.  Leave of court as prerequisite to action on guardian's bond, note, 2 A. L. R. 569.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge. Reversed.

The facts are stated in the opinion of the court.

E. W. Sargent, G. W. Cooke and S. W. Odell for Appellant.

S. E. Vermilyea and S. L. Carpenter for Respondent.

LENNON, J.—The appeal from the judgment in favor of the defendant in this action to quiet title to real property, situate in the city of Los Angeles, involves a determination of the legal effect of several and various transactions appertaining to the execution, satisfaction, and release of certain mortgages upon the property in suit. The facts of the case are practically undisputed and, as revealed by the pleadings, proof, and findings, are these: Johanna Agnes Keffel, the owner of the property in suit through whom both plaintiff and defendant derive their respective claims of interest in said property, being in ill health and believing her death to be not far off, transferred the said property by deed dated and delivered March 2, 1906, to her son, Max Keffel, without receiving any valuable consideration therefor, and the legal title thereto remained in the latter until December 3, 1909. At the time of this conveyance, Johanna Agnes Keffel was acting as the guardian of an incompetent son and the defendant, Fidelity and Deposit Company of Maryland, was surety on her guardianship bond in the sum of six thousand dollars. A portion of the funds of the incompetent which came into the possession of the guardian were misappropriated by her and applied to the "purchase or betterment" of the real property conveyed, as above set forth, to the son Max Keffel. At the request of defendant and for the purpose of securing the restoration to the incompetent of the moneys so misappropriated from his estate, Johanna Agnes Keffel caused her son, Max Keffel, to make a promissory note in the sum of two thousand two hundred dollars and to execute, as security therefor, a mortgage upon the property conveyed to him as aforesaid, both bearing date December 2, 1909. The note was payable to Johanna Agnes Keffel; the mortgage ran to said Johanna Agnes Keffel as

guardian. On December 3, 1909, Max Keffel and his wife reconveyed the property to the grantor, Johanna Agnes Keffel, without consideration. Some time after the reconveyance Johanna Agnes Keffel executed a mortgage, dated April 26, 1911, upon the same property to Mrs. M. J. Turner, to secure the repayment of eleven thousand dollars, borrowed from Mrs. Turner at that time by Johanna Agnes Keffel. This latter transaction was conducted by means of an escrow, approximately nine thousand dollars of the eleven thousand dollars being used to pay off two mortgages which had been executed and recorded prior to the execution of the two thousand two hundred dollar mortgage by Max Keffel. May 10, 1911, after these two prior mortgages, together with certain tax liens, had been satisfied and released and the expenses incident to the escrow had been paid, the escrow was closed and the balance of the eleven thousand dollars, namely, $1,046.96, was paid over to Johanna Agnes Keffel. Shortly before the closing of the escrow, to wit, May 6, 1911, Johanna Agnes Keffel, as guardian, released of record the two thousand two hundred dollar mortgage, which had been recorded at the request of an agent of defendant March 13, 1911. Neither the acceptance of this mortgage by the guardian nor its release by her was authorized by order of court, and no part of the sum secured thereby was ever returned to the ward's estate.

Johanna Agnes Keffel died intestate in October, 1911, leaving no estate other than the aforesaid real property and fifteen dollars in money. On February 21, 1914, Frank N. Goodman, who subsequently qualified as guardian of the incompetent son, instituted an action on the guardianship bond against the administrator of the estate of Johanna Agnes Keffel, deceased, and Fidelity and Deposit Company of Maryland, defendant herein, as surety, for the recovery of the money misappropriated from the ward's estate. Judgment was rendered in favor of the ward for the sum of $3,645.40, with interest. It appearing, upon petition of the guardian, that an appeal was about to be prosecuted from that judgment, the court authorized and empowered the guardian to compromise the claim arising from said judgment by accepting from defendant Fidelity and Deposit Company the sum of two thousand five hundred dollars in complete satisfaction of said judgment and, on receipt of

this sum, to make an assignment in writing to defendant, Fidelity and Deposit Company, of all interest of the ward and his guardian in the two thousand two hundred dollar mortgage executed to Johanna Agnes Keffel as guardian. This assignment was duly executed July 16, 1914, and the mortgage constitutes the basis of defendant's claim of an interest in the property in suit. Plaintiff held the eleven thousand dollar Turner mortgage by assignment and, having obtained a decree of foreclosure upon said mortgage December 5, 1914, purchased the property at a sale held in pursuance of the decree. Whether or not the mortgage assigned to defendant can be asserted as a valid, subsisting, and superior lien upon the property in suit is the problem propounded for solution.

The conclusions of law of the trial court were: (1) That the two thousand two hundred dollar mortgage was a valid lien on the premises, created for the protection of the incompetent and to secure the restoration to his estate of the moneys misappropriated by the guardian; (2) the marginal release of this mortgage was inoperative and void; (3) the estate and title of plaintiff in the said premises is inferior and subject to this prior subsisting mortgage; (4) defendant, by right of subrogation and legal assignment, is the owner of the two thousand two hundred dollar mortgage and entitled to enforce the same against the premises to the extent of the amount paid by it in satisfaction of the judgment in favor of the incompetent.

It appears from the record of the guardianship proceedings, which was introduced in evidence, that the petition for appointment, upon which the superior court made the order appointing Johanna Agnes Keffel guardian of her incompetent son, was unverified. The failure to verify the petition of appointment in accordance with the requirements of section 1763 of the Code of Civil Procedure amounted to no more than a defect in pleading, and the verification was not a jurisdictional requirement for the making of the appointment. [1] Where parties proceed to trial upon an unverified petition or answer without objection thereto, they are held, by so doing, to waive their right to object to the want of verification. (*People* v. *Reis,* 76 Cal. 269, 275, [18 Pac. 309]; *Hill* v. *Nerle,* 29 Cal. App. 473, [156 Pac. 981].) [2] It appears that after the filing of the petition for

appointment as guardian, notice was duly given and a hearing was regularly held, and the defect in pleading was, therefore, waived, and, no want of jurisdiction being disclosed on the face of the record, the order of appointment cannot be collaterally attacked. (*Isaacs* v. *Jones*, 121 Cal. 257, 261, [53 Pac. 793, 1101]; *In re Lundberg*, 143 Cal. 402, [77 Pac. 156].) For the purposes of this case, Johanna Agnes Keffel must be considered the duly appointed guardian of her incompetent son and subject to the rules governing such a guardian.

The facts of the case are substantially the same as those in the case of *Cummings* v. *Strobridge Land Syndicate*, 150 Cal. 209, [119 Am. St. Rep. 189, 88 Pac. 901]. There the guardian had embezzled two thousand dollars of the ward's money and executed a mortgage upon his own land in favor of the ward, by way of securing the deficit. Subsequently the guardian borrowed two thousand dollars from a third person, and, without authority from the court, released of record the mortgage previously executed by him to his ward. There was no agreement that the guardian was to apply the money received from the new mortgagee to the extinguishment of the ward's mortgage; he stated, however, that he would see that the ward's mortgage did not affect the lien of the new mortgage, and it was the understanding between the parties that the lien of the new mortgage should be a first lien upon the property. It was held that, inasmuch as the money was paid by the subsequent mortgagee to the guardian upon the release of the mortgage, such payment would be deemed a complete satisfaction of the mortgage, although the money was never, in fact, received by the ward. In that case the court said: "But aside from this and other like questions with which the case abounds, one proposition is determinative of the matter, and upon it this decision may rest. Assuming or conceding that the note and mortgage as given to the ward were valid so as to encumber the land, assuming also and conceding that the release of this mortgage was without authority of the court, conceding also that the witness Sayle [the guardian] does endeavor . . . to have it appear that he did not pay over to his ward the money which he received from the Baird mortgage, the fact remains that equity itself, under such circumstances as those here disclosed, makes such payment

in pursuance of its maxim that it will regard as done that which ought to have been done. When the money for the release of this mortgage came into Sayle's hands it was, in equity, the ward's money, and any improper use which Sayle thereafter made of it was but a second embezzlement of the ward's funds.''

[3] The facts of the present case bring it within the rule of equity thus enunciated. The owner of the property borrowed eleven thousand dollars upon her property from plaintiff's assignor, which was eight thousand eight hundred dollars in excess of the amount called for by a mortgage which she had previously executed to her ward. In order to obtain this eleven thousand dollars she released the ward's mortgage, and, therefore, there is traceable a direct connection between the payment of the money secured by plaintiff's mortgage and the release of the ward's mortgage. As a result equity regards the money, to the extent of two thousand two hundred dollars, as paid to the use and for the benefit of the ward. If the money is applied by the guardian to other uses, such misappropriation amounts to an embezzlement on the part of the guardian for which the person who pays the money to the guardian cannot be held accountable (Civ. Code. sec. 2244), and, in such a case, the ward must look to the guardianship bond for reimbursement.

[4] It is true that there were mortgages upon the property prior in time of execution to the ward's mortgage, which, together with the taxes and other items, amounted to nearly ten thousand dollars, and that, therefore, the eleven thousand dollars advanced by plaintiff's assignor was insufficient to pay both the ward's mortgage and these additional charges. But there is no proof that the release of the ward's mortgage was executed *after* the payment of the other liens. The escrow was begun April 24th, the ward's mortgage was released May 6th, and an escrow statement was rendered May 10th, from which it appeared that the liens prior to the ward's mortgage and certain expenses had been paid by that date, leaving a balance of $1,046. From all that appears, the ward's mortgage was released prior to the other payments, and the money which was the consideration for that release was later misappropriated to the payment of the other charges. But, however that may be, there was no contract or agreement which prohibited the

guardian from putting in escrow money in addition to that derived from the new mortgagee, so as to render the sum sufficient for the extinguishment of all existing liens and charges. In fact, it was the duty of the guardian to do this, in view of the understanding between the parties that plaintiff's assignor was to be given a new first mortgage upon the property in consideration of the eleven thousand dollar loan, and the lender had the right to assume that this was done. The lender was not required to go back of the record of the release and see that the money called for by the mortgage was actually applied to the deed of the ward; all that she was obliged to do under the circumstances was to see that there was placed in the hands of or to the credit of the guardian the amount of the ward's mortgage and, having done so, the receipt of the guardian, as such, was a sufficient acknowledgment of the appropriation of that amount to the use of the ward's estate, and thereupon the satisfaction of the mortgage became operative.

The cases relied upon by respondent in support of the point that the release of the mortgage to the ward was void differ from the present case in important particulars. In *Aldrich* v. *Willis,* 55 Cal. 81, the party executing the release was not the guardian and, consequently, was wholly unauthorized to represent the minor. In *Jennings* v. *Jennings,* 104 Cal. 150, [37 Pac. 794], inasmuch as the ward's mortgage was released several months prior to the execution of the new mortgage and the loan by the subsequent mortgagee was made to the mortgagor and a third party upon their joint promissory note, there is no indication of any relation between such payment and the release of the mortgage to the ward. The mortgage, as appears from the syllabus of that case, was released without any payment whatever. In *Martin* v. *De Ornelas,* 139 Cal. 41, [72 Pac. 440], it was, in effect, agreed between the person advancing the money and the guardian that the debt to the ward was not to be paid, but was to be secured by a new mortgage on different property, which was to be substituted for the released mortgage, and, of course, the ward was not bound by this unauthorized change of security, but could elect between the two mortgages.

The view we take of the validity of the release of the two thousand two hundred dollar mortgage renders unneces-

sary any consideration of plaintiff's various contentions with regard to its right to subrogation and the legal effectiveness of the ward's mortgage and the assignment thereof to defendant. Likewise it is unnecessary to discuss plaintiff's assignments of error in the admission of evidence.

The judgment of the trial court decreed "that defendant Fidelity and Deposit Company of Maryland is the owner of said mortgage and entitled to enforce the same against said premises for the sum of two thousand five hundred dollars and interest thereon from the sixteenth day of July, 1914. And . . . that the estate and title of the plaintiff in and to the said premises is subject to the lien of said mortgage to the amount of said sum of two thousand five hundred dollars and interest." [5] The recorded mortgage and the note secured thereby were for the specific sum of two thousand two hundred dollars, and defendant could not, in any event, become entitled to enforce the mortgage for a greater sum than two thousand two hundred dollars with interest, regardless of the amount paid by it under its obligation as surety, and the judgment was, therefore, erroneous in this additional particular.

Since defendant's mortgage does not constitute a valid and subsisting lien upon the premises, the judgment in favor of defendant must be reversed.

Wilbur, J., Olney, J., Shaw, J., Lawlor, J., and Angellotti, C. J., concurred.