[Civ. No. 7905. First Appellate District, Division One.—November 13, 1931.]

EMMA G. MULLANE, Petitioner, v. INDUSTRIAL AC-
CIDENT COMMISSION and PACIFIC GAS AND
ELECTRIC COMPANY (a Corporation), Respondents.

Edmund J. Holl and M. L. Haun for Petitioner.

A. I. Townsend for Respondents.

KNIGHT, J.—This is a proceeding in *certiorari* to review a decision of the Industrial Accident Commission.

On October 8, 1928, petitioner's husband, Edward A. Mullane, a salesman in the employ of the Pacific Gas & Electric Company in San Francisco, was violently and without provocation assaulted by a man conducting an apartment house when Mullane called at the house to demonstrate for a tenant therein a portable gas heater. He was seized about the throat, forced violently backward against the wall and then shoved down a flight of stairs. As he spiraled down the stairway his back struck forcibly against the banister, jamming the heater which he was holding under his arm against his back; and he finally landed at the foot of the stairs in a crouched position with his back against the banister. Mullane's employer, being self-insured, placed him under the care of Dr. Haber, its doctor. At that time Mullane's condition was not considered serious, and after remaining home a short time he resumed his duties; but his condition immediately grew worse and in a few days he was compelled to quit. Dr. Haber then caused X-rays to be taken which disclosed the development of a tubercular condition in the laryngeal and spinal regions; whereupon he was given a thorough examination by a specialist, Dr. Pierson, and placed under the care of Dr. Voorsanger at the latter's sanitarium near Los Gatos. Meanwhile, and on November 19, 1928, Mullane filed his application with the Commission for compensation. At the hearing which followed on November 22, 1928, the medical reports of Drs. Voorsanger and Pierson were introduced in evidence, wherein they stated that the injuries Mullane received in the assault had activated a pre-existing quiescent tubercular condition which had developed in the laryngeal and spinal regions; that his disability was therefore brought about by the injury, and they recommended continued medical and hospital treatment. Their conclusions and recommendations were approved generally in a letter written by Dr. Harbaugh, the Commission's assistant medical director. The Commission made an award accordingly, it

being found specifically that Mullane "sustained injury occurring in the course of and arising out of his employment, when he was assaulted"; that such injury resulted "in the activation of a preexisting tubercular condition in the laryngeal and spinal regions", thereby causing temporary total disability; that consequently he was entitled to compensation, reasonable medical expenses, and "further medical treatment necessary to restore him to the condition existing before the said injury". The company was evidently satisfied with the award because it made no application for a rehearing, and thereafter fully complied with its terms. However, Mullane's condition grew steadily worse, the tuberculosis eventually destroying the larynx, thus preventing the reception of food, and although he was furnished with the best of medical and hospital care he died of starvation. His death occurred on July 29, 1930, at the Ross Sanitarium, where he was confined for several months preceding his death, under the care of Dr. Shipman.

On October 2, 1930, his widow filed her application with the Commission, claiming the death benefit allowed by the provisions of said act, and on October 31, 1930, after a full hearing, the Commission, in conformity with its previous decision, granted her application. The medical evidence consisted of the oral testimony given by Drs. Pierson, Shipman and Haber, and the essential findings of fact upon which the Commission based its second decision were substantially the same as those made in the former proceeding, it being specifically found that Mullane "sustained an injury arising out of and occurring in the course of his employment as follows: Said Edward Alfred Mullane was assaulted and received injuries to himself, which resulted in an activation of a preexisting tuberculous condition in the laryngeal and spinal region, and that said injury so received proximately caused" his death on July 29, 1930. It further found that said injuries caused total disability from the date on which they were received up to the time of death, and that his widow, being wholly dependent on him, was entitled to the amount of the death benefit provided for by said act. And the concluding finding was that the "evidence is insufficient to warrant an apportionment of the [cause of] death between injury and pre-existing disease".

Later the company filed a petition for rehearing, and although the petition did not conform to the requirements of section 64 (c) of said act (Stats. 1917, p. 873) in that it was not verified, the Commission granted a rehearing, and thereafter, to wit, on February 24, 1931, without taking any additional evidence and notwithstanding that its third set of findings, relating to the cause of Mullane's disability and death, were in substantial accord with those contained in the two previous sets, the Commission denied her application. That is to say, the first of the findings on which it based its third and adverse decision was that Mullane was employed as a salesman by said company, and the remaining ones were as follows: ''2. On October 8, 1928, the said employee sustained an injury arising out of and in the course of his employment, consisting of certain bodily injuries caused by a personal assault. 3. The said injuries caused an aggravation of a pre-existing tuberculous condition thereby causing temporary disability. 4. The said employee died on July 29, 1930, the immediate and proximate cause of his death being the development of tuberculosis finally affecting the larynx and thus preventing the reception of food or nourishment with the consequent starvation.'' But, as indicated, the ultimate conclusion of the Commission, which was embodied in the fifth and last finding, was that ''the death of the said employee was not caused by the said injury occurring on October 8, 1928, and was not caused by injury arising out of or in the course of the said employment''; and therefore petitioner was denied any relief whatever.

■ Petitioner makes the preliminary point that the Commission was without jurisdiction to grant the petition for rehearing because it was not verified, as required by said act. But admittedly no objection was made upon that ground at the time it was under consideration, and therefore, since it is held generally that failure to verify a pleading is a defect which does not operate to deprive a court of jurisdiction to hear and determine the matter presented thereby (*Security Trust & Sav. Bank* v. *Fidelity & Deposit Co.*, 184 Cal. 173 [193 Pac. 102]), we find no merit in petitioner's contention.

■ However, aside from that point, in construing and giving effect to the provisions of the Workmen's Compensation Act, it has been uniformly held by the courts and the

Commission that "acceleration or aggravation of a pre-existing disease is an injury in the occupation causing such acceleration" (*G. L. Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587 [200 Pac. 17, 20]; *Knock* v. *Industrial Acc. Com.*, 200 Cal. 456 [253 Pac. 712, 714]; *Maurmann* v. *Chirchart & Nystedt etc.*, 1 I. A. C. 499; *Birk* v. *Matson Nav. Co.*, 2 I. A. C. 199). In the Eastman case the employee was afflicted with a pre-existing chronic heart trouble; and in holding that the case was nevertheless compensable the court said: "If the disability, although arising from a chronic heart trouble, was brought on by any strain or excitement incident to the employment, the industrial liability still exists" (citing numerous authorities). The Knock case is to the same effect. There the court cites with approval a proceeding from another state and says: "The case of *Peoria Co.* v. *Industrial Accident Board*, 279 Ill. 352 [116 N. E. 651], is also much in point, the court in that case holding, after a review of many cases both in this country and in England, that 'even where a workman dies from a pre-existing disease, if the disease is aggravated or accelerated under certain circumstances which can be said to be accidental, his death results from injury by accident', and is therefore compensable, citing 1 Bradbury on Workmen's Compensation, 385; Elliott on Workmen's Compensation, 7th ed., 9, and cited cases." And in the Industrial Accident Commission proceedings above cited, both of which involved cases of exacerbated tuberculosis, it was held that where an industrial accident causes a tubercular condition which has long been quiescent, to spring into renewed activity by reason of the shock and shaking up caused by the accident, the subsequent illness due to the renewed tubercular infection is proximately caused by the accident, and compensation may be awarded therefor. However, subdivision 4 of section 3 of said act (Stats. 1919, p. 910, sec. 1) provides that "in case of aggravation of any disease existing prior to such injury, compensation shall be allowed only for such proportion of the disability due to the aggravation of such prior disease as may reasonably be attributed to the injury", and in the present case the Commission, as already pointed out, has repeatedly and consistently determined as a fact that although Mullane was afflicted to some extent with a dormant pre-existing tubercular condition, his disability and death

were proximately caused by an aggravation and exacerbation of such disease activated by the injuries he received in the assault; and all of the medical evidence adduced at both hearings proves without conflict that such was the case. At the first hearing Dr. Voorsanger in his report, after stating that in his opinion Mullane was doubtless afflicted with a pulmonary disease prior to the assault, said: "We do know, however, that a blow, either direct or indirect, a fall, considerable straining or twisting may activate a latent bone tuberculosis such as we have here in the spine. If we can accept this man's statement that he was perfectly well as pain is concerned, prior to this accident [and there is no testimony whatever to the contrary] he should be given the benefit of the doubt and the accident should be looked upon as contributory." Dr. Pierson concluded his report as follows: "I do feel that the local trauma to his back reawakened the tuberculosis in his spine, evidenced by the abscess. I also feel that this general trauma and the bruising of his throat are factors in the developing of his laryngeal tuberculosis. It is therefore evident that, while his pulmonary tuberculosis is not of an industrial nature, the development of his laryngeal involvement, and the reactivation of his spinal focus are chargeable to industry, and should be cared for by the same until he is returned to the condition existing before the accident." And the letter written by Dr. Harbaugh expressly approves the opinion of Dr. Voorsanger.

At the hearing of the second petition, following Mullane's death, Dr. Pierson testified that Mullane's exacerbated tubercular condition of the lungs and spine "and the new development of the tuberculosis of the larynx were definitely the result of his injury at the time". Continuing, he said: "I feel the exacerbation of the previous two and the development of this new phase is the result of the accident, and had it not been for that injury the man might have lived for a considerable length of time." Furthermore, he stated that in his opinion the pre-existing tubercular condition was of very recent origin. There was nothing in the testimony of Drs. Haber or Shipman which conflicted even hypothetically with that given by Dr. Pierson. Dr. Haber frankly stated that he saw Mullane only three times shortly after the assault, and that therefore he was not sufficiently familiar with the case to venture an opinion upon the question of the effect

of the assault; and the record shows that Mullane did not come under Dr. Shipman's observation until June, 1929, and therefore his testimony related to Mullane's condition subsequent to that time.

In the state of the record above set forth it is evident that the conclusion of the Commission, as set forth in the fifth and concluding finding made on rehearing of the second proceeding, is not only inconsistent with and contradictory to the specific findings which precede it, but manifestly is contrary to the undisputed evidence adduced at both hearings and contravenes the plain provisions of said act, as declared in subdivision 4 of section 3 thereof. Therefore, the decision of the Commission based thereon, denying petitioner any relief whatever, should be annulled, and the proceeding remanded to the Commission for further action pursuant to the provisions of the act last mentioned, and in accordance with the views herein expressed. Such action will be not at all contrary to, but in complete harmony with, the position taken by said company in applying for a rehearing and with the request made by it to the Commission in the briefs it submitted in furtherance of such petition; for, as will be seen by an examination of both, the company clearly recognized the right of Mullane's widow to a considerable portion of the death benefit allowed by said act, and sought only to have the Commission make an apportionment thereof. In this regard, in its closing brief, the company says: ''We at no time disputed the right of an employee to recover for a disability which resulted from the aggravation of a pre-existing non-disabling tuberculous condition. The Compensation Law allows compensation for the aggravation of any pre-existing condition regardless of its nature. In the case before us we can see that it is proper to award compensation for the aggravation of the pre-existing tubercular condition which ultimately caused the death of Edward Mullane. The only point which we make is that the compensation allowed should be only a proportion of the amount which would otherwise be allowed in a case of death resulting solely from injury and without the complication of a pre-existing disease.'' And in the concluding paragraph it again says: ''In view of the foregoing we again repeat that the language of section 3 (4) of the Workmen's Compensation, Insurance and Safety Act of 1917 as amended in 1919 makes it mandatory

for the Commission to apportion the compensation or in other words allow only such amount as may *reasonably* be attributed to the injury. We are not particularly concerned with the method used or the amount allowed except that in our opinion it should be not more than two thirds of the normal compensation allowed in death cases." However, as will be observed, the Commission went much further than requested, and denied petitioner any amount whatever.

For the reasons stated the decision of the Commission is annulled, and the application is remanded for further proceedings in accord with the views expressed herein.

Tyler, P. J., and Cashin, J., concurred.