[Civ. No. 7116.   Third Dist.   Nov. 10, 1944.]

THE PEOPLE, Respondent, v. ALEXANDER GOLDSTEIN COMPANY (a Corporation), Appellant.

Norman A. Eisner for Appellant.

Robert W. Kenny, Attorney General, John L. Nourse and James E. Sabine, Deputies Attorney General, for Respondent.

THOMPSON, J.—The defendant, Alexander Goldstein Company, a corporation, has appealed from a judgment which was rendered against it for corporation franchise taxes due and payable to the state for the years of 1936, 1937 and 1938, pursuant to the provisions of the Bank and Corporation Franchise Tax Act. (Stats. 1929, p. 19, and amendments; Deering's Gen. Laws, 1937, p. 3851, Act 8488.)

The appellant contends that it was exempt from franchise taxes during said three years for the reason that the corporation was dormant and because it transacted no business of financial or pecuniary profit within the definition of the term "doing business" as it is stated in section 5 of the act.

The corporation was organized in California several years prior to 1936. It was what is commonly termed a family corporation. Its stockholders were confined to the members of

the Goldstein family. Its articles authorized the corporation to buy or sell stocks or bonds; to borrow or loan money; to take or execute promissory notes; to mortgage, hypothecate, lease, rent, purchase, sell or exchange real or personal property, and to do all things necessary to transact business with relation thereto. Some of the stockholders died, but the corporation never ceased to exist or to operate. Its charter was never forfeited. It possessed assets of a value in excess of $1,000,000. In 1936 it negotiated twenty different purchases of bonds of various standard corporations of the aggregate value of $103,701.60, one purchase of stock of the value of $499.75, and collected interest on its collaterals and bank deposits in the aggregate sum of $21,112.82. In 1937 it made twelve separate purchases of bonds costing $52,586.99, six purchases of stocks for $11,870.62, and collected interest in the sum of $21,706.25. In 1938 it consummated four separate purchases of bonds for $25,013.81, five purchases of stocks costing $5,029.13, and collected interest in the sum of $20,936.56. Prior to 1936 it loaned money in the aggregate sum of $13,918 to four different persons, three of whom were members of the family. During each of said three years interest in the sum of $200 was paid to the corporation on one of said notes. Interest was regularly collected on savings bank deposits. Dividends on stocks and bonds were regularly received. From time to time rights to purchase additional shares of stocks at reduced prices were received by the defendant during said three years and sold by the corporation.

Franchise taxes were paid by the defendant for operating during said three years, as follows: For 1936 the sum of $832.82 was paid; for 1937 the sum of $948.14 was paid, and for 1938 the sum of $91.41 was paid. Those taxes were subsequently refunded by the Franchise Tax Commissioner on the mistaken theory that the defendant did not transact business during those years. Upon the rendering of a subsequent decision of the Supreme Court determining the nature of the business of similar corporations which would render them liable for such taxes, the commissioner demanded of the defendant repayment of said sums, which was refused. This suit to recover said franchise taxes was then commenced in the Superior Court of Sacramento County. The cause was tried before the court sitting without a jury. Upon evidence adduced the court adopted findings favorable to the state in

every respect, holding that the corporation was actively engaged in business in California during each of said years, rendering it liable for said franchise taxes. Judgment was accordingly rendered against the defendant for said sums together with interest and costs. From that judgment this appeal was perfected.

We are convinced that the transactions of the corporation previously mentioned, including the purchase and sale of stocks and bonds during each of said years, constitute activity in the doing of business, as defined by the statute, which renders the defendant liable for franchise taxes. (*Carson Estate Co.* v. *McColgan,* 21 Cal.2d 516 [133 P.2d 636].) There is evidence of numerous sales of stocks and bonds. Since there is an abundance of evidence to show numerous purchases and sales of stocks and bonds during each of said years, which was evidently the chief purpose of organizing and maintaining said corporation, it is not necessary to determine in this case whether the mere collecting of interest on bank saving accounts, or the mere collecting of interest on notes received prior to the period for which the taxes are levied, constitutes the doing of business which would render the corporation liable for taxes. Nor is it material that some of the stocks or bonds were sold at a loss. We assume that one may be ''doing business'' within the definition of section 5 of the act, *''for the purpose* of financial or pecuniary gain or profit,'' even though he sells stocks or bonds for less than par or the original purchase price thereof. The sale of stocks or bonds on a declining market, for less than par or the original purchase price thereof, may benefit the seller, by thus avoiding a greater loss by further depreciation of values. If the transactions are conducted *''for the purpose* of financial or pecuniary gain'' they come within the definition of that term as it is used in the act even though that object is not accomplished. One who follows the pursuit of trafficking in stocks and bonds, like the merchant who trades in any other commodity, must be deemed to be engaged in business even though many of his transactions result in losses. If the purpose of the pursuit is for profit, it constitutes a business regardless of gains or losses. All businesses do not attain the purpose for which they are operated. All stock and bond enterprises do not succeed. Many of them became bankrupt in 1929. A lack of success may be due to poor judgment or to circumstances and condi-

tions over which the sellers have no control. The enterprises may nevertheless constitute the doing of business.

Section 4 (3) of said act provides that every corporation, except financial corporations and those which are specifically exempted by that act, is liable for the payment of annual franchise taxes computed at the rate and in the manner therein specified. It is conceded that the defendant is not a financial corporation.

Nor is the defendant a "holding corporation." It was not organized or operated as such. Section 4 (4) of the act does exempt holding corporations from the payment of franchise taxes in the following language:

"Holding Corporations. Any corporation organized to hold the stock or bonds of any other corporation or corporations, and not trading in such stock or bonds or other securities held, and engaging in no other activities than the receipt and disbursement of dividends from such stock or interest from such bonds, shall not be considered a corporation doing business in this State for the purposes of this act."

The defendant was not organized for the sole purpose of holding the stocks and bonds of other corporations. It was organized for the purpose of trading, and it actually did trade, in stocks and bonds of various other corporations. That was apparently its chief business, together with the handling of the family corporation property. It is therefore not exempt as a "holding corporation" under the provisions of the last quoted paragraph. That particular term has a well known application and is defined in the next to the last paragraph of section 278 of the Civil Code, as follows:

"Holding Corporations. If a corporation, domestic or foreign, has power either directly or indirectly or through another corporation or series of other corporations, domestic or foreign, *to elect a majority of the directors of another corporation,* domestic or foreign, *any of such corporations having controlling power shall be deemed to be a 'holding corporation'* in its relation to any corporation which it so controls, and any such corporation which is subject to such control shall be deemed to be a 'subsidiary corporation' in its relation to any such controlling corporation." (Italics added.)

The appellant does not contend that it was organized, or that it had power, "to elect a majority of the directors of another corporation." There is no evidence that it claimed

that right or power, or that it attempted to exercise any such power. It was not a holding corporation.

In the case of *Golden State Theatre & Realty Corp.* v. *Johnson,* 21 Cal.2d 493 [133 P.2d 395], a judgment denying plaintiff the right to a refund of franchise taxes paid under protest, under circumstances similar to those of the present case, was reversed. The Supreme Court held that the corporation's authorization to endorse a note in 1936, the ratification of a lease and the payment of rent on theater property, the purchase and leasing of certain property and the collection of rent therefrom, constituted the doing of business, and that the plaintiff was not a holding corporation. In that case the corporation contended that it was not "actively" engaged in any transaction "for pecuniary gain or profit since its purpose was not to operate a business but merely to acquire property and derive income therefrom." The Supreme Court said:

"It is also clear that these transactions were entered into for pecuniary gain or profit. . . . Such an interpretation of 'actively' would nullify the 1933 modification of the definition of doing business. . . . By its plain terms a corporation is doing business if it actively engages in any transaction for pecuniary gain or profit. Defendant would identify 'doing business' with 'carrying on a trade or business.' A series of transactions regularly engaged in may be necessary to establish the 'carrying on of a trade or business' but the Legislature made it clear that it had no such concept in mind when it referred to transaction in the singular as 'any transaction.' The word 'actively' must therefore be interpreted as the opposite of passively or inactively, and as used in section 5 it means active participation in any transaction for pecuniary gain or profit."

The consolidated cases of *Carson Estate Co.* v. *McColgan* and *Watson Land Co.* v. *McColgan, supra,* appear to be determinative of this appeal, contrary to the contentions of the appellant in this case. Those corporations paid franchise taxes under protest, and sought to recover the money. Judgment was rendered against them. On appeal the Supreme Court affirmed the judgment with respect to the validity of those taxes. The transactions which were held to constitute the doing of business as defined in section 5 of the act consisted only of purchasing and selling stocks and bonds of other

corporations during each of the years involved, and of receiving dividends therefrom. It appears that the stocks and bonds were sometimes sold for a profit and sometimes at a loss. The opinion in that case is a model of brevity, but it is apparently conclusive of the issue as to whether the purchase and sale of stocks and bonds, whether the transactions are conducted at a profit or at a loss, do constitute "doing business" as defined in the act, and render the corporations liable for payment of franchise taxes, under such circumstances.

The case of *Union Oil Associates* v. *Johnson,* 2 Cal.2d 727 [43 P.2d 291], upon which the appellant in this case relies, is not in point. It is necessarily distinguished from the present case by a clear material difference regarding the facts.

In determining that the company in the last cited case was a holding corporation which was exempt from franchise taxes because it merely held the stock of another corporation and distributed the dividends therefrom among its stockholders and that it had not sold, mortgaged or hypothecated any of its stock, the court concluded by saying that it "is not a business corporation. . . . It is organized to hold the stock of the Union Oil Company, *and does not trade in such stock, and engages in no other activities than the receipt and disbursement of dividends."* (Italics added.)

That statement is not true of the corporation which is a party to this suit. The Alexander Goldstein Company was organized to, and it actually did, trade in the stocks and bonds of various other corporations by buying and selling numerous blocks of stocks and bonds for the purpose of thereby earning profits. Those transactions constituted activity in "doing business," as the Carson Estate Company case, *supra,* definitely holds. We therefore conclude that the appellant was actively engaged in doing business during the years 1936, 1937 and 1938, and that it was therefore liable for franchise taxes.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 8, 1945.