[Civ. No. 7444. Third Dist. July 12, 1948.]

THE PEOPLE, Respondent, v. BIRCH SECURITIES CO.
(a Corporation), Appellant.

704

George Acret for Appellant.

Fred N. Howser, Attorney General, and James E. Sabine, Deputy Attorney General, for Respondent.

THOMPSON, J.—The State of California brought suit against the defendant, a foreign corporation, for franchise taxes due and payable for the years 1935 and 1936, pursuant to the provisions of the Bank and Corporation Franchise Tax Act. (Stats. 1929, p. 19, and amends.; 3 Deering's Gen. Laws, p. 3010, Act 8488.) The amended complaint was couched in two counts. The trial court adopted findings favorable to plaintiff, and rendered judgment accordingly upon each cause of action. From that judgment the defendant has appealed.

The appellant contends that the amended complaint fails to state facts sufficient to constitute a valid cause of action; that the findings and judgment are not supported by the evidence; that the Franchise Tax Commissioner failed to serve notice on the defendant of the levy of additional taxes as prescribed by section 25 of the act, as a prerequisite to the maintenance of the action; that the court failed to adopt findings on certain affirmative defenses set up in its answer; that the court erred in rejecting evidence of a prior judgment of the federal court in a suit entitled "*A. Otis Birch* v. *Charles J. McColgan, as Franchise Tax Commissioner, et al.*" and that the last-mentioned judgment is res judicata and a bar to the maintenance of this suit. The defendant asserts that it is not a business corporation or engaged in any transactions for pecuniary profit and that it is therefore exempt under section 4, subdivision 4, of the act from additional franchise taxes. The chief argument is that the State of California is estopped by the federal judgment, previously mentioned, from levying or collecting additional franchise taxes in this suit.

The defendant is a Nevada corporation which was organized in that state in 1934, and thereafter authorized under section 405 of our Civil Code to transact business in the State of California. It is not a holding corporation pursuant to section 4, subdivision 4, of the act. Its charter declares that the corporation was formed "To acquire by purchase, subscription, or otherwise, and to hold for investment or otherwise and to use, sell, assign, transfer, mortgage, pledge or otherwise deal with or dispose of stocks, bonds or any other obligations or securities of any corporation . . ."; to purchase, own, operate and sell farms and land of every character; to buy, sell and deal in cattle and livestock of every kind; to own and operate vineyards, orchards, nurseries, packing plants and distilling enterprises, and to own and conduct general brokerage businesses of all kinds of goods, wares and merchandise. Ever since Octo-

ber 18, 1934, the corporation has existed and maintained a place of business in Los Angeles, rendering annual reports to the Franchise Tax Commissioner, but has paid only the minimum license fee provided for by section 4, subdivision 3, of the act, of $25 per year.

The complaint alleges that the defendant conducted business in California during the years of 1935 and 1936, for pecuniary profit, as defined by section 5 of the act, and that, after examination of defendant's reports and records of transactions of said two years, the Franchise Tax Commissioner ascertained the net income and additional franchise taxes due therefor, together with interest and penalties provided for by the act, and assessed additional taxes in the amounts specified in the complaint; that said assessments and demands were served by mailing them to the address furnished upon defendant's filed reports, with the postage prepaid, as required by the tax act; that the defendant failed to protest said levy within 60 days thereafter, or at all, and that no part of said additional assessments was paid. This suit was thereafter commenced.

The answer denies the material allegations of the complaint, and affirmatively alleges that the defendant is a mere holding corporation and was not engaged in business in California for pecuniary profit; that the defendant did not receive said notices of assessments of additional taxes, and that the plaintiff, State of California, is estopped from maintaining this action by a judgment which was rendered in the United States District Court of Southern California, in February, 1941, in an action entitled *A. Otis Birch* v. *Charles J. McColgan, as Franchise Tax Commissioner, et al.,* which became and is res judicata of the issues of this cause.

The trial court found that the defendant was engaged in business in California for pecuniary profit during said two years and derived the net profits correctly stated in the Franchise Tax Commissioner's return and levy of assessments for additional taxes upon which said taxes were computed, as stated in the complaint, no part of which was paid; that said levy of additional taxes was not protested by the defendant; that notices of said assessments were mailed to the defendant, with the postage prepaid, at the post office address of the defendant in Los Angeles appearing upon its filed reports; that *said notices were received by the defendant,* and that the judgment relied upon in said federal court was not between the parties to this action; that it did not adjudicate the issues

involved in this case, and that it is not res judicata and does not constitute an estoppel from maintaining this suit.

Judgment was thereupon rendered against the defendant for the additional franchise taxes, together with interest and penalties, as prayed for in the complaint. From that judgment this appeal was perfected.

We are of the opinion the amended complaint states a good cause of action for unpaid franchise taxes due to the State of California by the defendant. This suit was brought by the attorney general and the complaint was signed by two of his deputies. It is not verified. The essential allegations are in the form of positive statements of facts and not upon mere information and belief. ■ The record on appeal contains no demurrer to the pleading or indication that a demurrer thereto was filed or passed upon by the court. We must, therefore, assume no demurrer was filed. ■ The only defects of pleading pointed out by the appellant are that the complaint is not signed by the Franchise Tax Commissioner, or verified, and that the officers who did sign the pleading failed to state the essential facts based upon their "information or belief." There is no merit in this contention. The complaint directly involves the rights and interests of the State of California. It was not necessary for the Franchise Tax Commissioner to personally sign or verify the complaint. The attorney general, as the chief law enforcement officer of the state, has the authority and power, in the absence of a statute to the contrary, to institute, conduct and maintain all civil actions involving the rights and interests of the state, such as the collections of unpaid franchise taxes. (*Pierce* v. *Superior Court,* 1 Cal.2d 759, 761 [37 P.2d 453, 460] ; Const., art. V, § 21; 7 C.J.S. § 8, p. 1226; Pol. Code, § 470.) Any duties which the attorney general may perform personally may ordinarily be performed by his regularly authorized assistants. (7 C.J.S. § 5, p. 1223, "Delegation of duties.")

■ It was not necessary that the complaint in this case should be verified. Section 446 of the Code of Civil Procedure specifically provides that "When the State, . . . or any officer of the State, . . . in his official capacity is plaintiff, *the complaint need not be verified.*" (1 Bancroft's Code Pl., § 495, p. 710.) ■ Moreover, failure to verify a pleading when required by statute, is a mere defect of pleading. It is not jurisdictional. The absence of a demurrer on that ground, and proceeding to trial without objection, is a waiver of the

asserted defects of pleading. (*Security Trust & Savings Bank* v. *Fidelity & Deposit Co.*, 184 Cal. 173, 176 [193 P. 102]; *In re Staser*, 84 Cal.App.2d 746, 751 [191 P.2d 791]; 21 Cal. Jur. 220, § 152.) ▉ The public records of the Franchise Tax Commissioner were available to the officers who signed the complaint. We must assume they inspected those records and obtained knowledge therefrom of the essential facts related in the complaint. When facts are available from public records, it is ordinarily improper to allege such facts on mere information and belief. (*Brooks* v. *Nelson*, 95 Cal.App. 144, 150 [272 P. 610]; *Hall* v. *James*, 79 Cal.App. 433 [249 P. 876]; 21 Cal.Jur. § 101, p. 150.) ▉ We cannot perceive how the defendant was prejudiced by the direct allegations of essential facts, instead of founding such recitations on information and belief. No judgment may be set aside for mere errors "as to any matter of pleading" unless such error complained of "has resulted in a miscarriage of justice." (Const., art. VI, § 4½.)

▉ There is adequate evidence to support the finding of the court that the Franchise Tax Commissioner prepared and mailed to the defendant at his post office address at 504 W. P. Story Building, in Los Angeles, with the postage prepaid, as required by section 25 of the act, his assessment of additional taxes for the years 1935 and 1936, and the notices thereof. The service of said notices in that manner fulfills the requirement of the law. (3 Deering's Gen. Laws, Act 8488, § 25; Code of Civ. Proc., § 1013.) Section 25 of the act provides that the commissioner's certificate of such notices shall be "prima facie evidence of the computation and levy of the deficiency in tax and of the giving of said notices." (*People* v. *Mahoney*, 13 Cal.2d 729, 737 [91 P.2d 1029].) ▉ The defendant's return of income, which was filed February 17, 1936, upon which it paid only the minimum fee of $25, contained the business address above stated. Mr. A. Otis Birch testified that he did not receive the two notices involved in this suit, but admitted he actually received a notice mailed by the commissioner to the corporation at said address on February 18, 1937, and another similar notice mailed three weeks later. He did testify that defendant's office was moved from the fifth floor of said building to No. 929 on the ninth floor of the same building the "latter part of 1936." But he admitted that "a desk and furniture" belonging to the corporation remained in room No. 504 of that building. We are satisfied the evidence supports the finding that the commissioner complied with the

statute in serving upon the defendant by mail the said notices of additional taxes due to the State of California.

The evidence adduced at the trial supports the finding that the defendant corporation was actively engaged in business transactions in California during the years of 1935 and 1936, for financial and pecuniary profit. Section 5 of the act defines the term "doing business" as "actively engaging in any transaction for the purpose of financial or pecuniary gain or profit." We assume the defendant corporation was liable for franchise taxes for said two years under section 4, subdivision 3, of the act. It was not exempt from such taxes under section 4, subdivision 4, of the act, which provides that:

"Any corporation organized to hold the stock or bonds of any other corporation or corporations, and *not trading in such stock or bonds or other securities held, and engaging in no other activities than the receipt and disbursement of dividends from such stock or interest from such bonds,* shall not be considered a corporation doing business in this State for the purposes of this act." (Italics added.) (See *People* v. *Alexander Goldstein Co.*, 66 Cal.App.2d 771 [152 P.2d 1016].)

Under the evidence of this case it may not be said the defendant was not engaged in trading in other stocks or bonds, or that it was not engaged in other activities for pecuniary profit. The evidence clearly shows that the defendant was authorized by its charter to engage in various industrial enterprises, the profits from which would be subject to franchise taxes. The defendant's annual returns which were filed with the Franchise Tax Commissioner show that it was engaged in loaning money for profit derived from interest thereon. The return filed December 15, 1936, plaintiff's Exhibit 4, page one, item 7, shows income of "Interest on loans, etc. $225.50." The return marked plaintiff's Exhiibt 2, page 5, under the caption "Schedule F—Bad Debts," item 3, shows that the defendant "charged off during the current year" the loss of $1,450, for the following reason: "Reasons for charge off: Investment in Mica Mine, representing cash advanced in various sums from May 2, 1935 to October 30, 1935, with the understanding that same would be treated as a loan, and be returned. For the use of the money so loaned, we were to receive an interest in the Mica Mine which now appears to have become worthless, and the money loaned to have been lost." Moreover, at the bottom of the first paragraph of section 31 of the act it is provided that the certificates of the

commissioner, which were received in evidence, "shall be prima facie evidence of the levy of the tax, penalties, and interest, of the delinquency and of compliance by the commissioner and the State Board of Equalization with all the provisions of this act in relation to the computation and levy of the tax." The defendant failed to protest said assessments.

In spite of some conflict of evidence with relation to the defendant's business activities, we are satisfied there is ample evidence to support the finding that it was doing business in California during said two years for financial profit, sufficient to support the finding and judgment in that regard.

The appellant contends that the court failed to adopt findings on several specified issues in the case. We have examined each of those asserted omissions. We are of the opinon the court adopted findings adequate to support the judgment upon all material issues. Finding III is that the defendant engaged in (business) activities in California during the two years in question, "other than the receipt and disbursement of dividends from stock or interest from bonds." The last-quoted language was taken from section 4, subdivision 4, of the act, and negatives defendant's claim that it was a mere "stock or holding corporation." Finding IV specifically determines that "defendant actively engaged in transactions in the State of California for the purpose of financial or pecuniary gain or profit" during said two years. The court did not specifically find that the Bank and Corporation Franchise Tax Act of California is constitutional. But it did find that the claims of the State of California mentioned in the complaint were valid "and the whole of said additional tax is now due, owing and unpaid, together with interest as provided in the Bank and Corporation Franchise Tax Act."

It is apparent that a more specific finding on the constitutionality of the act would necessarily be adverse to the appellant. Numerous authorities have determined that an appellant is not prejudiced by failure to find upon issues, which, in support of the judgment, would necessarily be adverse to him. (*Kramer* v. *Sanguinetti*, 33 Cal.App.2d 303, 311 [91 P.2d 604]; *Phillips* v. *Stark*, 65 Cal.App. 136 [223 P. 443]; *Reiniger* v. *Hassell*, 216 Cal. 209 [13 P.2d 737]; 24 Cal.Jur. § 188, p. 944.) The appellant fails to discuss the question of the constitutionality of the act. We are directed to no authority and no reason is assigned upon which we may hold that the act is unconstitutional. For the purpose of this appeal we must therefore assume that the act is constitutional.

 The appellant is mistaken in assuming that the court failed to find upon the issue of the alleged estoppel of the former federal judgment in the case of *A. Otis Birch* v. *Charles J. McColgan, as Franchise Tax Commissioner.* Finding number XII specifically determines that the former judgment "is not res judicata in this action and does not constitute an estoppel. Said judgment did not adjudicate the issues of this action. The cause of action involved in said federal court proceeding was not the same as the causes of action here involved. The parties in said federal court proceeding were not the same as the parties to this action." Plaintiff's objection to the introduction of the record in the federal case was therefore properly sustained. The printed record of that former case is presented to this court as an appendix to appellant's brief.

 The chief issue on this appeal is the question as to whether the federal judgment is res judicata of the issues of this suit. We are of the opinion the trial court correctly held that it is not res judicata of the essential issues of this case. The State of California was not a party to that suit. It was merely a suit by A. Otis Birch, against certain named officers of the state to enjoin them from interfering with the business of the Birch Securities Company, in the State of California, under section 32 of the Bank and Corporation Franchise Act, by forfeiting or suspending the corporation's charter or rights and privileges in this state acquired pursuant to section 405 of the Civil Code. It does not purport to enjoin the State of California from levying or collecting any franchise taxes which were or might become due from said corporation to the state. The former judgment merely provides that the named defendants and their agents "are hereby permanently enjoined from maintaining, enforcing or giving effect to, or attempting to maintain, enforce or give effect to, any suspension or forfeiture, or purported suspension or forfeiture, of the corporate powers, rights or privileges of said Birch Securities Company," and from prosecuting the officers of the corporation for exercising rights or privileges of the company on the ground that the charter has been revoked or suspended.

The former federal judgment is not res judicata of the issues of this case nor a bar estopping the State of California from maintaining this action to recover unpaid franchise taxes. That case was not a suit to recover illegal franchise taxes paid by the corporation under protest. It was an

equitable suit to restrain certain named officers of the state, as such, from suspending or revoking the foreign corporation's rights to conduct its business within this state. The State of California was not a party to that suit. The state did not authorize that injunction proceeding to be brought against it. Indeed, section 30 of the Franchise Tax Act specifically forbids such an action. It provides in part:

"No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action or proceeding in any court against this State or against any officer thereof to prevent or enjoin the assessment or collection of any tax under this act but any taxpayer claiming that the tax computed and levied against it pursuant to Sections 24.1 and 25 of this act is void in whole or in part may bring an action against the commissioner for the recovery of the whole or any part of the amount paid."

Article XX, section 6, of the state Constitution provides that "Suits may be brought against the state in such manner and in such courts as shall be directed by law." (*Rose v. State of California*, 19 Cal.2d 713, 723 [123 P.2d 505].) That provision of the Constitution should be strictly construed. It has been held that a suit to recover taxes which have been illegally collected may be brought against the state only in the manner and in such courts as shall be directed by law. (2 Cooley on Taxation (3d ed.), p. 1487; *Bekins Van & Storage Co.* v. *State of California*, 135 Cal.App. 738 [28 P.2d 61]; *Brandt* v. *Riley*, 139 Cal.App. 250 [33 P.2d 845].) If the federal injunction case should be construed to necessarily determine the invalidity of the franchise taxes which are involved in this case it would render the limitation of the Constitution against suing the state without its consent, and the inhibition of section 30 of the Franchise Tax Act, nugatory and ineffectual. We therefore conclude that judgment is not binding on the State of California in this suit.

In the present case the appellant alleged in its answer and urges on appeal that additional franchise taxes may not be enforced against the corporation without violating the Fourteenth Amendment to the United States Constitution, and article I, section 13, of the California Constitution. It will be observed the former federal judgment, which was offered in evidence as a bar to this action, was merely against certain named officers of the state, as such, and not against the State of California. That case was not a suit against the State of California, and is therefore not res judicata in this

action or an estoppel against the state maintaining this action for unpaid franchise taxes. When a suit is brought only against invidually named officers of a state, as such, it is ordinarily not an action against or binding upon the state. (*Stone* v. *Interstate Natural Gas Co.*, 103 F.2d 544; *Smyth* v. *Ames*, 169 U.S. 466 [18 S.Ct. 418, 42 L.Ed. 819]; *Prout* v. *Starr*, 188 U.S. 537 [23 S.Ct. 398, 47 L.Ed. 584]; *Carr* v. *United States*, 98 U.S. 433 [25 L.Ed. 209]; *Reagan* v. *Farmers Loan & Trust Co.*, 154 U.S. 362 [14 S.Ct. 1047, 38 L.Ed. 1014]; The U.S. Const., Anno., (1938) Amend. 11, Suits against States, p. 727, note.) In the Smyth case, *supra*, Mr. Justice Harlan, speaking for a unanimous court, said, at page 839:

". . . It is the settled doctrine of this court that a suit against individuals for the purpose of preventing them as officers of a state from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the state within the meaning of that Amendment. [Citing authorities.]"

The Stone case, *supra*, appears to be conclusive of that issue in the present action. In that case the United States Circuit Court reversed the district court which enjoined the Franchise Tax Commissioner of Mississippi and other officers of that state from enforcing the collection of franchise taxes under the Mississippi statute. It was contended the corporation was engaged only in interstate commerce and therefore exempt from the state taxes. The circuit court held that the State of Mississippi was not a party to that action, and therefore was not estopped by the former injunction which was issued against the officers only. It said:

"We conclude also that the judgment in the three-judge case of Dec. 4, 1931, is no estoppel. It does not appear to be between the same parties. The Gas Company is plaintiff in both suits but Stone, the present defendant who is sought to be bound by the former judgment, was not a party to it. This suit against him is a personal suit and the judgment rendered is a personal judgment. Execution on it would run against him. The reference to him as Commissioner is descriptio personae. *Smietanka, Collector* v. *Indiana Steel Co.*, 257 U.S. 1, 42 S.Ct. 1, 66 L.Ed. 99. The three-judge suit was against other individuals, who though officers were enjoined from what they were about to do on the ground that the law of their office did not justify them. The State of Mississippi for whom they tried to act was not a party, though her Attor-

ney General was among those sued. She could not under the Eleventh Amendment, U.S.C.A. Const. have been sued. How officers who act for their government under an unconstitutional authority may be sued, and yet their governments not be bound by the judgment, is fully explained in *United States v. Lee*, 106 U.S. 196, 222, 1 S.Ct. 240, 27 L.Ed. 171. See also *Sage* v. *United States*, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828; *Hussey* v. *Crane*, 222 U.S. 88, 93, 32 S.Ct. 33, 56 L.Ed. 106; *Carr* v. *United States*, 98 U.S. 433, 25 L.Ed. 209; *Stanley* v. *Schwalby*, 162 U.S. 255, 16 S.Ct. 754, 40 L.Ed. 960. *Stone can now justify his collection of those taxes as fully as the State of Mississippi could do if she were now sued; and as she is not bound by the former judgment against her officers, he is not."* (Italics added.)

For the foregoing reasons the judgment is affirmed.

Adams, P. J., concurred.

Peek, J., deeming himself disqualified, does not participate herein.

A petition for a rehearing was denied August 7, 1948, and appellant's petition for a hearing by the Supreme Court was denied September 8, 1948.