[L. A. No. 21102. In Bank. Feb. 17, 1950.]

PACIFIC INDEMNITY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and C. J. ROTONDO, Respondents.

Herlihy & Herlihy and J. McLaughlin for Petitioner.

T. Groezinger and Robert Ball for Respondents.

CARTER, J.—This is a review of an award of workmen's compensation to C. J. Rotondo based upon the finding that he suffered a disability consisting of aggravation of preexisting pulmonary tuberculosis. Petitioner asserts (1) that the evidence does not support the finding that the disability arose out of and occurred in the course of Rotondo's employment, and (2) that the claim was barred by the statute of limitation. (Lab. Code, § 5405, application must be filed within six months after injury.)

In 1941, Rotondo was employed by Cal-Aero Academy, as a flight instructor. The employer was training pilots for the Army Air Corps. In 1942, Rotondo, while flying, developed symptoms of pulmonary tuberculosis, consisting of a hemorrhage. He was advised by his employer that his disability was not compensable. He was then treated in a hospital for about four months, followed by resting at home. In January, 1943, the employer requested him to return to work with the assurance that he would be assigned to radio communication duty in the control tower—light inside work. He was cleared by his physician for such work, but after two weeks in that capacity, the employer assigned him to flight instructor duties. A physician's report in May, 1943, showed the preexisting disease to be arrested. As flight instructor, Rotondo was in the air six days a week, working from four to nine hours a day and sometimes longer. In this work he was subjected to the resultant changes in barometric pressure and temperature. Most of those flying suffered from colds more or less continuously from the temperature changes. In February of 1944, while "rocking" the wing of an aircraft (a process by which the wing is manually lifted up and down to assist in freeing a wheel bogged in the sand), he felt "catches" in his chest and later expectorated blood.

In May, 1944, while cranking a plane, he had a similar experience. In July, 1944, feeling tired, he left work and stayed at home to rest. On November 16, 1944, his former physician, Dr. Pottenger, examined him and advised him that the tubercular condition had been reactivated. He filed his claim with the commission on February 9, 1945.

The evidence is ample to support the finding that the reactivation of his condition was caused by his work—arose out of and occurred in the course of his employment. Dr. Pottenger testified that if all Rotondo had to do was sit in the control tower, his condition would not have been reactivated; that hemorrhages were caused by changes in weather—changes in barometric pressure; that flying under the conditions prevailing in Rotondo's case was ''just the thing'' that would start reactivating the tubercular condition; that rocking and cranking the plane could cause a hemorrhage. The sum and substance of his testimony is that Rotondo's work as a flying instructor was the cause of the lighting up of his previous disease. There is evidence that any work or activity would aggravate the condition and that there was no particular connection between Rotondo's work and the disability. This presents nothing more than a conflict in the evidence which has been resolved against petitioner.

*Hartford A. & I. Co.* v. *Industrial Acc. Com.*, 140 Cal.App. 482 [35 P.2d 366], and *California etc. Exchange* v. *Industrial Acc. Com.*, 76 Cal.App.2d 836 [174 P.2d 680], relied upon by petitioner are not controlling for the conflict in the evidence here existing was not present in those cases. On the contrary, the cases support the view that there was sufficient evidence here to support the award. (See *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 73 Cal.App.2d 555 [166 P.2d 908]; *Lumbermen's Mut. Cas. Co.* v. *Industrial Acc. Com.*, 29 Cal. 2d 492 [175 P.2d 823]; *Mullane* v. *Industrial Acc. Com.*, 118 Cal.App. 283 [5 P.2d 483].)

On the issue of the statute of limitation, petitioner asserts that Rotondo knew or should have known more than six months prior to February 9, 1945, when he filed his application for compensation, that his disease had been reactivated and that it was compensable. It is settled that the statute does not commence to run until the employee's condition, whether from disease or injury, culminates in incapacity to work and the employee knows, or in the exercise of ordinary care should know, that he is suffering from the disease or injury and that such disease or injury was caused by his employ-

ment (*Pullman Co.* v. *Industrial Acc. Com.*, 28 Cal.2d 379 [170 P.2d 10]; *Alford* v. *Industrial Acc. Com.*, 28 Cal.2d 198 [169 P.2d 641]; *Huysman* v. *Kirsch*, 6 Cal.2d 302, 312 [57 P.2d 908]; *Faith* v. *Erhart*, 52 Cal.App.2d 228 [126 P.2d 151]; *Marsh* v. *Industrial Acc. Com.*, 217 Cal. 338 [18 P.2d 933]), and those issues present questions of fact to be determined by the commission. (*Alford* v. *Industrial Acc. Com.*, *supra*; *Marsh* v. *Industrial Acc. Com.*, *supra*.) ▉ The burden of proving that the employee has or should have had such knowledge rests on the employer or his insurance carrier. (*Associated Indem. Corp.* v. *Industrial Acc. Com.*, 71 Cal.App.2d 820 [163 P.2d 771]; *Argonaut M. Co.* v. *Industrial Acc. Com.*, 21 Cal.App.2d 492 [70 P.2d 216].) Specific applications of the rule show that merely because the employee had some symptoms is insufficient to sustain the burden (*Argonaut M. Co.* v. *Industrial Acc. Com.*, *supra*); that the employee is not required to be versed in medical knowledge (*Associated Idem. Corp.* v. *Industrial Acc. Com.*, *supra*; *Marsh* v. *Industrial Acc. Com.*, *supra*), and thus, that it is not fatal that he made a mistaken diagnosis of his trouble. (*Price* v. *Industrial Acc. Com.*, 9 Cal.App.2d 213 [49 P.2d 294].)

▉ Rotondo testified that he first discovered on November 16, 1944, that his disease had become reactivated. There is no direct evidence whatever that prior to that date he knew he had a compensable condition—that his condition was caused by his employment. No physician ever advised him that his ailment was employment connected. His testimony that he first learned the above stated facts on November 16, 1944, is, standing alone, sufficient to prove that he did not know. (See, *Western Pac. R. R. Co.* v. *Industrial Acc. Com.*, 17 Cal.App.2d 119 [61 P.2d 459]; *Employers' etc. Corp.* v. *Industrial Acc. Com.*, 42 Cal.App.2d 669 [109 P.2d 716].) Hence the only question is whether he should have known, and on that issue the commission was justified in concluding that petitioner failed to sustain its burden, particularly, when we remember that it is a question of fact. When Rotondo became ill with tuberculosis in the first instance (1942), his doctor did not advise him that it was caused by flying—his work. He inquired of his employer, through his wife, as to whether the original attack was compensable and was advised it was not. Although the fact that he inquired may have indicated that he thought he might be entitled to compensation, such thought was banished by his employer. When he re-

turned to work in January, 1943, he was not especially warned by his doctor against flying. The only physician who mentioned flying to him as the cause of his illness was Dr. Titus who suggested, following the 1942 attack, that he not do night flying. He was informed by his physician after he had returned to flying in 1943 that it was "all right" for him to go ahead with his "old work," and later he was advised by a doctor that the disease was arrested and he could carry on his usual work. It is true that he had hemorrhages, became tired and quit work, and was told that he had a cavity in July, 1943, yet it cannot be said as a matter of law that he should have then known that he had a compensable disease— reactivation of his former condition caused by his employment. Thus, since Rotondo did not know that his first attack (1942) of the disease was due to his employment (only one doctor mentioned flying as a cause); that his employer had informed him then that he was not entitled to compensation; and his doctors had not particularly warned him against flying— some of them having told him he could return to his "old work," the commission was justified in concluding that petitioner had not sustained the burden of proving the claim barred by the statute of limitation.

The award is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.