[Civ. No. 16583. First Dist., Div. One. Sept. 22, 1955.]

TIMOTHY ALFRED BOWLER, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

*Assigned by Chairman of Judicial Council.

Irving S. Rosenblatt, Jr., and Tobriner, Lazarus, Brundage & Neyhart for Petitioner.

Charles P. Scully as Amicus Curiae on behalf of Petitioner.

Everett A. Corten, T. Groezinger, Daniel C. Murphy, Mullen & Filippi and Frank J. Filippi for Respondents.

BRAY, J.—Petitioner seeks review and the annulment of an award and decision after reconsideration made by respondent Industrial Accident Commission, in which the commission found that petitioner sustained an industrial injury, consisting of a coronary occlusion causing, in addition to

temporary total disability, a permanent partial disability of 78 per cent, of which, after apportionment, only 19½ per cent is attributable to the injury.

## QUESTIONS PRESENTED

1. Is the commission's finding as to the proportion of disability attributable to the industrial injury supported?

2. Does apportionment apply where the preexisting condition was asymptomatic?

3. Was there a finding of a preexisting condition?

1. *Sufficieny of Evidence.*

The question before us is, is there substantial evidence to support an apportionment, and if so, to support the percentage of apportionment fixed by the commission.

June 23, 1953, Bowler, employed by Circus Foods, Inc., while engaged in heavy physical labor, consisting of loading and unloading lumber into a truck, suffered an acute coronary occlusion (myocardial infarction). Prior to this incident he had never experienced any physical discomfort from, or known that he had, any heart disease.

 There was conflicting medical testimony as to whether Bowler's present disability is partially or at all due to a continuation of the prior condition apart from the effects of the infarction. Six medical doctors testified or reported. All agree that Bowler suffered a myocardial infarction. All except Dr. Selzer agree that there was a preexisting heart disease. Dr. Selzer conceded that it probably was present. All but one agree that the infarction was due to Bowler's labor and the preexisting condition. Dr. Selzer was of the opinion that the infarction was entirely due to the industrial injury. Dr. Thomas was of the opinion that the infarction was entirely due to the preexisting condition, and not to the labor. Thus, there is ample evidence to support the commission's implied findings of a preexisting heart condition and that the disability was caused by the industrial injury and the preexisting condition.

Moreover, the evidence supports the commission's findings as to the percentage of present disability. All doctors agree that Bowler can never do heavy work again and will be limited to clerical or sedentary work. Dr. Selzer and Dr. Holko fixed the percentage of disability at 70. Dr. Read placed the disability at 75 per cent. These were the only doctors putting a percentage on the present disability. The rating bureau evaluated the permanent disability at 78 per

cent, which figure was accepted by the commission. Apparently petitioner does not challenge the sufficiency of the evidence to support this figure. He hardly could do so under the evidence. Dr. Read was of the opinion that the present disability is only partly due to the industrial injury "lighting up" or aggravating the preexisting disease; that Bowler's arteriosclerosis is still there and that the time of another occlusive episode would be influenced not so much by his activity as by the underlying disease. Dr. Greenspan testified that in his opinion Bowler had preexisting coronary arteriosclerosis, of which there were no external signs or symptoms; that the infarction was due to his labor and the preexisting pathology. He then stated that he did not think he could say how much of his present disability was due to the preexisting arteriosclerosis and how much to the physical labor at the time of the infarction.

Dr. Jacks reported that the disability "should be apportioned at twenty-five per cent disability as a result of the coronary occlusion and seventy-five per cent due to the preexisting disease of *ath*erosclerosis." Dr. Thomas, who believed that the industrial injury was not responsible for the present disability, testified that there was a remote possibility that it might have been and that "The permanent disability could reasonably be apportioned as twenty-five per cent due to the remote possibility of work precipitation of the coronary occlusion and seventy-five per cent due to the underlying disease." Dr. Holko was unable to give a figure as to what proportion of the disability is chargeable to the labor activity and what to the preexisting disease.

■ While the medical testimony was conflicting, it is clear from the foregoing that there was substantial evidence to support the commission's ruling that only 25 per cent of the total permanent disability is chargeable to the industrial injury.

2. *Apportionment.*

■ Petitioner's main contention is that under the law of California, an employer who employs a man who has an asymptomatic condition takes him as he finds him, and is responsible for all disability following an industrial injury which lightens up that condition. But that is not the law. Section 4663, Labor Code, expressly provides that such employer is only required to compensate for the proportion of the disability due to the aggravation of a preexisting disease, and this is true whether the preexisting condition is symp-

tomatic or asymptomatic. ■■ "It is now definitely settled that the acceleration, aggravation or 'lighting up' of a preexisting disease is an injury in the occupation causing the same." (*Tanenbaum* v. *Industrial Acc. Com.*, 4 Cal.2d 615, 617 [52 P.2d 215] ; see also *Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 73 Cal.App.2d 555, 558-559 [166 P.2d 908].)

■ If the resultant disability is due entirely to the lighting up or aggravation of the preexisting condition by the industrial injury, the employer is required to compensate for the entire disability and there can be no prorating the extent of the disability due to the accident itself on the one hand and that due to the aggravation caused by the employee's physical condition. (*Tanenbaum* v. *Industrial Acc. Com.*, *supra*, 4 Cal.2d at pp. 617, 618.) ■ However, if the resultant disability is partly due to an industrial disability growing out of the injury, including the aggravation or "lighting up" of the preexisting dormant condition, and in part, of what may be termed a nonindustrial disability resulting from the normal progress of the preexisting disease or condition, then the commission must apportion the percentage of the disability due to the injury and the percentage due to the continuance of the disease apart from the injury. (*Tanenbaum* v. *Industrial Acc. Com.*, *supra*, 4 Cal.2d at p. 618; see also *Industrial Indem. Co.* v. *Industrial Acc. Com.*, 95 Cal.App.2d 443, 449 [213 P.2d 11].)

■ "It was a question of fact for the determination of the commission as to whether applicant's permanent disability resulted from the effect of the accident, including the aggravating effects of the accident upon a preexisting disease, or whether the disability or a part thereof resulted from the normal progress of a preexisting disease. If a part of the disability resulted from the normal progress of a preexisting disease then a portion of the permanent disability rating herein should have been attributed to the preexisting disease." (*Industrial Indem. Co.* v. *Industrial Acc. Com.*, *supra*, 95 Cal.App.2d 443, 450.)

■ The cases cited by petitioner do not hold otherwise. Cases like *Moore Shipbuilding Co.* v. *Industrial Acc. Com.*, 70 Cal.App. 495 [233 P. 392] (lead poisoning), *Colonial Ins. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 79 [172 P.2d 884] (silicosis), *Globe Indemnity Co.* v. *Industrial Acc. Com.*, 125 Cal.App.2d 763 [271 P.2d 149] (silicosis), deal with occupational diseases. As to those there is a special rule to the effect that the employee may, at his option, obtain an

award for the entire disability against any one or more of successive employers if the disease and disability were contributed to by the employment furnished by the employer chosen even though the particular employment is not the sole cause of disability. The employer chosen may then obtain apportionment from the other employers. Death cases, too, are in a different category. (See *G. L. Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587 [200 P. 17]; *Mullane* v. *Industrial Acc. Com.*, 118 Cal.App. 283 [5 P.2d 483].)

In *Idaho Maryland etc. Corp.* v. *Industrial Acc. Com.*, 104 Cal.App.2d 567 [232 P.2d 11], the petitioner had a preexisting heart disease. Apparently the only medical testimony was that of a physician appointed by the commission. This doctor testified both that the petitioner's present disability was due to the industrial injury alone, and that it was due both to the injury and the preexisting condition, and should be apportioned. The court held that the finding of the commission that the entire disability was due to the injury and that there should be no apportionment, was substantially supported by that portion of the doctor's testimony to that effect "even though we might regard, as does petitioner, the portions of Dr. Wolfman's testimony which is favorable to it, as more convincing and amply sufficient to support a contrary decision." (P. 570.) Here, the commission took the evidence which supported an apportionment. There is a "well settled rule that it is the province of the commission to resolve conflicts in the evidence (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 33 Cal.2d 89 [199 P.2d 302]), and this is true whether the conflict arises from the testimony of one witness or whether it arises from witnesses upon opposing sides. (*People* v. *Holman*, 72 Cal.App. 2d 75, 90 [164 P.2d 297].) Hence where, as here, there is substantial evidence to support the findings and award of the commission this court cannot substitute its views for those of the commission and annul the award . . ." (P. 570.)

While the case contains a statement that section 4750, Labor Code, applies only to a preexisting known condition and not to a dormant one, it is directly contrary to *Tanenbaum* v. *Industrial Acc. Com.*, *supra*, 4 Cal.2d 615, which held that apportionment is proper where there is an aggravation of an active or progressive disease and that the dormant character of the preexisting disease will not prevent apportionment. Referring to the situation there the court said (p. 618): "We find nothing in the above authorities,

or in others that have come to our attention, that in any way militates against the apportionment made in the present case. As we read the record in this proceeding, the petitioner is now suffering from a disability made up in part of an industrial disability growing out of the injury, including the aggravation or 'lighting up' of the preexisting dormant arthritic condition, and, in part, though in a lesser degree, or what may be termed a nonindustrial disability resulting from the normal progress of the preexisting arthritis. Obviously, the latter disability is not attributable to industry and should not be saddled thereon. It is this latter or nonindustrial disability, resulting from the natural and normal progress of the preexisting condition, that underlies the finding that petitioner's permanent disability is 'partly caused by preexisting dormant disease and partly by said injury' and requires the apportionment here made.''

Likewise in *Industrial Indem. Co.* v. *Industrial Acc. Com.,* *supra,* 95 Cal.App.2d 443, the court held there was substantial though conflicting evidence to support the commission's finding that the petitioner's disability was entirely caused by the industrial injury and not by the preexisting or asymptomatic condition. It is significant that in neither of these cases dealing with preexisting asymptomatic conditions was there any suggestion by the court that, as contended for here, there can be no apportionment because the condition was asymptomatic. Actually the court pointed out that it would have been a question of fact for the commission if it had determined that a part of the petitioner's disability resulted from the normal progress of his preexisting disease to then find what portion of the permanent disability rating should have been attributed thereto.

Although the preexisting condition in *Subsequent Injuries Fund* v. *Industrial Acc. Com.,* 39 Cal.2d 83 [244 P.2d 889], was a symptomatic one (loss of vision of left eye) the principle of apportionment was there applied when due to an industrial injury the employee received an injury to his right eye. *Scott* v. *Alaska Industrial Board,* 91 F.Supp. 201, was actually an occupational disease (silicosis) case, although it was not decided on that ground It held that as against the second injury fund where the preexisting condition was asymptomatic and not disabling there can be no apportionment with a subsequent industrial injury. This is not the California law which holds that there can be apportionment in a proper case whether the condition was symptomatic or

asymptomatic. *Zyla* v. *A. D. Juillard & Co.*, 277 App.Div. 604 [102 N.Y.S.2d 255], dealt with the New York fund similar to our Subsequent Injuries Fund, and held that as to that fund there can be no apportionment between a preexisting condition *unknown to the employer* and a subsequent industrial injury.

Petitioner objected to the testimony of the doctors on apportionment of the disability on two grounds: (1) That where the preexisting condition is asymptomatic there can be no apportionment, and (2) that the doctors presented no objective data to support the apportionment. These objections were made by letter and were not formally ruled on. However, the report of the referee and the decision of the commission made thereafter constituted overruling of the objection. Neither ground of the objection is good. ▆▆ Where the preexisting condition of an employee is asymptomatic and an industrial injury causes disability other than death, there is a question which generally can only be determined by medical testimony as to whether the ensuing disability is entirely due to the injury, or partially to a continuance of the preexisting condition. ▆▆ As to the second ground of objection, there was medical testimony that the effect of the infarction had stabilized and that considerable of Bowler's disability was due to the continued effect of his arteriosclerosis. This question of the cause of his present disability was one upon which the medical men were competent to give their opinion.

3. *Findings.*

▆▆ Petitioner attacks the award on the ground that the commission made no express finding that Bowler had a preexisting disease. But such finding is implicit in the determination by the commission that his disability subsequent to the action is 78 per cent of which only 25 per cent is chargeable to the industrial injury. Especially is this so when the commission's decision after reconsideration states that the injury caused "permanent partial disability, *after apportionment,* of 19½% . . ." (Emphasis added.) The commission had to find a preexisting condition in order to make apportionment. As to whether this preexisting condition was nondisabling and asymptomatic there never was a substantial issue that it was not. Both petitioner and all the medical men giving opinions on the subject agreed that it was completely unknown and nondisabling. The findings were sufficient. (See *Lumbermen's Mut. Cas. Co.* v. *Industrial Acc. Com.,*

29 Cal.2d 492, 499 [175 P.2d 823].) *Horn* v. *Industrial Acc. Com.*, 128 Cal.App.2d 837 [276 P.2d 673], is not in point. There the commission denied the petitioner compensation. In doing so it failed to find whether the petitioner suffered or did not suffer a disability. The petitioner had a heart condition which was symptomatic and which gradually prevented him from working. The commission felt that there was no industrial injury because there had been no infarction. The case was reversed for the failure to find on disability and the lack of support for the finding that the petitioner had suffered no industrial injury. Nor is *Taylor* v. *Industrial Acc. Com.*, 38 Cal.App.2d 75 [100 P.2d 511], applicable here. There the employer was charged with serious and wilful misconduct in a number of particulars which were disputed. The commission without finding on the existence of any of these particulars merely found the bald conclusion that the employer was guilty of serious and wilful misconduct. As pointed out by the court, the employer had no way of knowing on what particular matter or matters the misconduct was based. The findings which petitioner claims are lacking here resulted by necessary implication from the findings and judgment. That is sufficient. (See *Richter* v. *Walker*, 36 Cal.2d 634, 640 [226 P.2d 593].) "We should read into the general findings of the commission specific findings upon all factual issues that tend to support the award and which have substantial support in the evidence." (*Gaytan Engineering Co.* v. *Industrial Acc. Com.*, 95 Cal.App.2d 740, 742 [213 P.2d 737].)

The award is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied October 21, 1955, and petitioner's application for a hearing by the Supreme Court was denied November 16, 1955. Carter, J., was of the opinion that the application should be granted.