[Civ. No. 29686.   Second Dist., Div. Two.   Dec. 6, 1965.]

SOUTHERN CALIFORNIA EDISON COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and CLAYTON L. ADAMS, Respondents.

Rollin E. Woodbury, Harry W. Sturges, Jr., Norman E. Carroll and David C. Hensley for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Levy, DeRoy, Geffner & Van Bourg and Barry Satzman for Respondents.

KATZ, J. pro tem.*—On November 24, 1961, Clayton Adams, hereafter referred to as applicant, was hit on the forehead by a ladder while engaged in his employment as service crew foreman for Southern California Edison Company, hereafter referred to as petitioner. He continued to work for almost two weeks after which he noticed a "spot" before his right eye, and on January 5, 1962, underwent surgery for a detached retina. In February, applicant returned to work and continued until March when he suffered a hemorrhage in the right eye. Two months later, he had a heart attack. Applicant had coronary arteriosclerosis, a non-occupational heart ailment, long prior to November 24, 1961, but apparently the condition had been asymptomatic.

*Assigned by the Chairman of the Judicial Council.

Application for permanent disability was filed with the Industrial Accident Commission, respondent herein, on February 13, 1963, and hearings were held thereon. On June 3, 1965, the referee issued findings and award wherein he determined that applicant had sustained injury "consisting of a detached retina, right eye, and to his right ear, head, aggravation of pre-existing arteriosclerosis, cardiac condition and emotional disturbance" which he rated at 93¼ per cent of total permanent disability. In his report on the findings and award, the referee concluded that "inability to work is due solely to the infarct precipitated by the injury," and he denied apportionment to the preexisting arteriosclerosis of any portion of the disability attributable to applicant's cardiac condition. Petitioner's petition for reconsideration seeking apportionment of the cardiac disability was denied by respondent commission on July 13, and this proceeding for review followed.

Petitioner contends that applicant's cardiac disability should have been apportioned between the preexisting arteriosclerosis and the industrial injury of November 24, 1961. We agree.

▮ The rule requiring apportionment is stated in *Ferguson* v. *Industrial Acc. Com.*, 50 Cal.2d 469, at pages 477, 478 [326 P.2d 145], as follows: "The rule is, of course, that where a disability is due entirely to an industrial injury and the lighting up or aggravation of a preexisting condition by such industrial injury, the employer is required to compensate for the entire disability *so caused* (within the limits defined in Lab. Code, § 4663) and there is no apportionment of disability as between the industrial accident on the one hand and that due to the *industrially caused aggravation* of the employe's preexisting physical condition. ▮ But if the entire disability is partly due to industrial disability growing out of the immediate injury (including such industrially caused aggravation or lighting up of a preexisting dormant condition) and, in part, to a nonindustrial disability resulting from normal symptoms, effects or progress of a preexisting disease or condition, then there is an apportionment of the percentage of the disability due to the *industrial cause* (the injury) and the percentage due to the disease itself and its symptoms, effects and progress apart from the injury." (*Tanenbaum* v. *Industrial Acc. Com.*, 4 Cal.2d 615 [52 P.2d 215]; *City of Glendale* v. *Industrial Acc. Com.*, 153 Cal.App.2d 213 [314 P.2d 182]; *De La Tova* v. *Industrial*

*Acc. Com.,* 137 Cal.App.2d 516 [290 P.2d 377] ; *Bowler* v. *Industrial Acc. Com.,* 135 Cal.App.2d 534 [287 P.2d 562].)

█ Whether disability is due entirely to the injury, including the aggravating effect of the injury upon a preexisting condition, or partly due to a continuance or normal progress of the preexisting condition is a question of fact for the commission to determine (*De La Tova* v. *Industrial Acc. Com., supra,* at p. 522), but the question ''generally can only be determined by medical testimony.'' (*Bowler* v. *Industrial Acc. Com., supra,* at p. 542.)

█ In the present case, three doctors reported on applicant's cardiac condition. Two of them expressed the opinion that the myocardial infarction sustained by applicant in May of 1962 (which the referee found to be disabling) was not industrially caused or related. They reported, in effect, that the heart attack resulted solely from the preexisting arteriosclerosis. Thus Dr. Winsor, who examined applicant on behalf of petitioner, stated that as a result of the preexisting arteriosclerosis, applicant suffered the retinal detachment and infarct, and that neither the arteriosclerosis nor the cardiac condition was caused by his occupation. Dr. Smolens, applicant's own doctor, reported that it was possible, but not medically probable, that the accident of November 24, 1961, the surgery of January 5, 1962, and the attendant anxiety caused or contributed to the infarct of May 1962. Since an award cannot rest upon evidence of a mere possibility of industrial causation (*Travelers Ins. Co.* v. *Industrial Acc. Com.,* 33 Cal.2d 685 [203 P.2d 747] ; *National Acc. & Cas. Ins. Co.* v. *Industrial Acc. Com.,* 95 Cal.App.2d 10 [212 P.2d 1]), it is apparent that neither the report of Dr. Winsor nor of Dr. Smolens would support any award against petitioner based on disability attributable to a heart disease or condition.

The only evidence which supports the award based on cardiac disability is that given by Dr. Kalmansohn, the independent medical examiner, and that evidence requires apportionment of such disability. Dr. Kalmansohn's report reads as follows: ''There is little doubt that the primary cause of this patient's heart disease is arteriosclerosis which is a normally progressive phenomenon occurring in most people as it was in him; however, it is impossible to state that his head injuries and emotional disturbances and anxiety following this injury was not completely separated from the heart disease, it is felt that these injuries and the surgery

which was required may have been an aggravating factor and could have played a part in the development of the heart attack. Without any definite way of measuring the exact percentage I will estimate that the effect of the accident upon the resulting heart attack was about 10%.'' He testified orally that the emotional disturbance accompanying the industrial injury probably aggravated the preexisting arteriosclerosis, that the anxiety attendant upon the injury was a contributing factor to the infarct, and that ''the infarct was primarily due to the process of hardening of the arteries which has been going on for years, and the infarct which resulted from this process, plus whatever contribution the injury added to it, produced the disability.''

Respondent commission, in denying reconsideration, viewed the report and testimony of Dr. Kalmansohn as ''medical opinion based on etiology'' which did not require apportionment. It erred in so doing. We believe that a fair reading of the quoted report and testimony clearly indicates that Dr. Kalmansohn was of the opinion that the heart attack was caused in large part by the normal progress of the preexisting condition or disease and to a much lesser extent by aggravation of that preexisting condition by the injury and surgery, and that the cardiac disability is due in part to the preexisting arteriosclerosis itself apart from the industrial injury.

The referee's report notes that Dr. Kalmansohn, testifying on cross-examination, first ''stated that damage to the heart muscle was what precluded applicant from doing anything but sedentary work'' and then ''stated however that the arteriosclerosis and damage to the heart muscle could not be separated with reference to the disability which precluded applicant from doing other than sedentary work.''[1] Such

---

[1]The quoted statement in the referee's report was based upon the following colloquy between the referee and doctor: ''Q. And applicant's inability to do other than sedentary work is due to what—the infarct, the pre-existing arteriosclerosis, both or what? A. Well, as I indicated, the infarct was primarily due to the process of the hardening of the arteries which has been going on for years, and the infarct which resulted from this process, plus whatever contribution the injury added to it, produced the disability.

''. . . . . . . . . . .

''Q. What I'm trying to find out, is it damage to the heart muscle which precludes him from doing other than sedentary work? A. Yes, sir.

''Q. Or was it the pre-existing arteriosclerosis? A. You cannot separate the two because the arteriosclerosis is the primary reason for the infarct.

testimony did not afford any basis for denying apportionment. Obviously, the second statement required it. Even if the referee was justified in disregarding that statement on the theory that it was in conflict with the first statement, the need for apportionment remained. If the entire cardiac disability is attributed to the infarct, the question then becomes what caused the infarct, and, as already indicated, Dr. Kalmansohn was of the opinion that the infarct was due partly or mainly to the preexisting disease or condition apart from the aggravating effect thereon of the injury. The situation, therefore, is unlike that in *Idaho Maryland etc. Corp.* v. *Industrial Acc. Com.*, 104 Cal.App.2d 567 [232 P.2d 11], where the doctor first testified that a percentage of the disability was due to preexisting arteriosclerosis uninfluenced by the industrial accident but later stated that the preexisting condition would not have been disabling if the accident had not occurred.[2]

The report of the referee also contains the following statement: "The doctor testified with the degree of arteriosclerosis present in the applicant he could have had an infarct at rest as well as while engaged in activity. Thus he could not state that applicant would have had an infarct at the time he did absent the preceding industrial injury." The first quoted sentence would appear to be further proof that the doctor believed the infarct resulted, at least in part, from the natural effects or normal progress of the preexisting arteriosclerosis.[3] The fact that Dr. Kalmansohn could not state that

---

"...   .    .    .    .    .    .    .    .    .    .    .

"Q. . . . We have a heart condition here in which there was a pre-existing arteriosclerosis which permitted applicant to work. A. Yes.

"Q. Subsequently he had an infarct— A. Yes, sir.

"Q. —causing muscle damage. Now, what I want to know is which of the two actually precludes him from working now other than sedentary work? A. You mean the hardening of the arteries or the infarct?

"Q. Yes. A. Well, the infarct, which is due to hardening of the arteries primarily, I can't separate the two."

[2]The testimony in the present case was almost directly contrary to that in the cited case. There the doctor indicated the injured employee who had preexisting arteriosclerosis "would have been good for years" if he hadn't had the injury. Here, the doctor stated that it would be impossible to state the employee would or would not have had a heart attack absent the injury, that he might have had the heart attack and could have had such an attack at any time absent the injury, and that with the degree of arteriosclerosis present in the employee, he could have an infarct without any aggravation by emotional strain or otherwise.

[3]The doctor also testified that applicant "might have had a heart attack" when he did "had nothing ever occurred," and that with the

applicant would have had a heart attack when he did if there had been no industrial injury does not support denial of apportionment. Having formed the opinion that the injury ''may have been an aggravating factor and could have played a part in the development of the heart attack,'' Dr. Kalmansohn could not reasonably be expected to state the patient would have had a heart attack when he did even without the injury. If he were of that opinion and so stated, his testimony, like that of Dr. Winsor and Dr. Smolens, would have established that the cardiac disability was not industrially caused or related and there would then be no basis for any award against petitioner with reference to such disability. *Allied Comp. Ins. Co.* v. *Industrial Acc. Com.* 211 Cal.App.2d 821, 827 [27 Cal.Rptr. 918].)

In concluding that apportionment was properly denied by the referee, respondent commission stated that ''In order to apportion permanent disability, there must be medical evidence indicating that there would be permanent disability present even though there was no industrial accident.'' If the statement means there was no evidence in the present case that permanent disability was due in part to the preexisting condition without reference to the effect thereon of the industrial accident, respondent was mistaken regarding a question of fact as heretofore demonstrated. If, on the other hand, the statement means there can be no apportionment unless the medical evidence shows the preexisting condition was symptomatic or previously manifested in actual inability to work, respondent was mistaken regarding a question of law. (*Tanenbaum* v. *Industrial Acc. Com., supra; Bowler* v. *Industrial Acc. Com., supra; State of California* v. *Industrial Acc. Com.,* 135 Cal.App.2d 544 [288 P.2d 31].)

We conclude that the medical testimony shows that some portion of applicant's cardiac disability is due to his preexisting nonoccupational heart disease, and that, accordingly, there must be an apportionment of the percentage of such disability due to the industrial and nonindustrial causes.

The award is annulled and the case is remanded to respondent commission with directions to determine the percentage of applicant's disability attributable to his industrial injury and to make a new award based thereon.

---

degree of arteriosclerosis present in applicant, he ''could have a myocardial infarction at any time.''

Herndon, Acting P. J., and Fleming, J., concurred.

The petition of respondent Adams for a hearing by the Supreme Court was denied February 2, 1966. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.